**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Premalal Ranasinghe, et al., | No. CV-14-00369-PHX-ROS |
| Plaintiffs, | **ORDER** |
| v. | |
| Joseph J. Popolizio, et al., | |
| Defendants. | |

Before the Court is Defendants' motion to dismiss the amended complaint. (Doc. 25). For the following reasons, the motion will be granted.

**BACKGROUND**

The following facts are taken from Plaintiffs' amended complaint. In 2008, Sarath Sapukotana ("Sarath") was working as a truck driver when, while at a truck stop in Rio Rico, Arizona, he was "run over and crush[ed]" by a tractor trailer owned and operated by Van Straalen Farms Trucking (the "Trucking Company"). Sarath was taken to the hospital, but eventually died from injuries he sustained in the accident.

Following Sarath's death, two women made claims against the Trucking Company for wrongful death: Plaintiff Palihawadanage Ramya Chandralatha Fernando ("Fernando") and Martha Gay Sapukotana ("Martha Gay"). Fernando claimed she had married Sarath in 1992 in their native Sri Lanka, but that Sarath had immigrated to the United States in 1993 "for economic reasons." Martha Gay claimed she had married Sarath in the U.S. after he had obtained a divorce from Fernando in a Florida Court.

On May 28, 2008, Martha Gay filed suit against the Trucking Company in federal

court in Arizona. The Trucking Company was insured by Great West, which hired the law firm Jones Skelton & Hochuli PLC ("Jones Skelton") to handle the litigation.

Fernando appointed Plaintiff Premalal Ranasinghe ("Ranasinghe") her "attorney-in-fact" for purposes of representing her "against the wrongdoers who killed her husband."[1] On April 2, 2008, Ranasinghe served Great West notice of Fernando's claim against it.

Almost a year later, in May 2009, Defendant Joseph Popolizio ("Popolizio") sent a letter to Ranasinghe, identifying himself and Defendant Phillip Stanfield ("Stanfield") as the Trucking Company's attorneys.[2] The letter informed Ranasinghe of Martha Gay's competing claim and, apparently, both requested Ranasinghe contact Popolizio and stated Popolizio would call Ranasinghe. Later that month, Defendants wrote to Great West identifying Ranasinghe as Fernando's attorney, but noting his lack of registration with the New York Bar. Shortly thereafter, Popolizio phoned Ranasinghe to tell him Great West had appointed Jones Skelton "to discuss the matters in the plaintiff's claim on behalf of deceased Sarath."[3] Popolizio discussed Martha Gay's competing case with Ranasinghe and stated Great West would be willing to negotiate a settlement for Fernando's claim with Ranasinghe and would compensate Fernando for Sarath's death "when at Jury Trial in Arizona the jury decides that the marriage of Martha with deceased Sarath was of convenience." Popolizio asked Ranasinghe to assist him in the case against Martha Gay by providing Popolizio with evidence of Fernando's marriage to Sarath. Popolizio stated he would "pursue the matter with Great West . . . to make at least simultaneous payment for both spouses Martha and Mrs. Fernando."

---

[1] Ranasinghe is not a licensed attorney-at-law in the United States. The designation "attorney-in-fact" refers to power of attorney. A general power of attorney "authorizes an agent to transact business for the principal." Black's Law Dictionary (9th ed. 2009).

[2] Popolizio and Stanfield worked for Jones Skelton, which is also named as a defendant in this action under a theory of vicarious liability. Collectively, Popolizio, Stanfield, and Jones Skelton are "Defendants."

[3] It is not entirely clear from the complaint whether "plaintiff" referred to Martha Gay or Fernando.

On November 3, 2009, Popolizio emailed Ranasinghe stating, "I do not want judgment to enter establishing Martha Sapukotana as the proper wrongful death Plaintiff in my action and I am sure that you don't either. Please do whatever you need to do to provide these items to . . . me today….a.s.a.p." On November 29, 2009, Fernando, through attorney Nadi Ganesan Viswanathan ("Viswanathan"), moved to intervene in Martha Gay's action against Great West. (Doc. 64, 4:08-cv-00327-AWT). The district court denied the motion to intervene based on the *Rooker-Feldman* doctrine and the domestic relations exception to diversity jurisdiction. (Doc. 107, 4:08-cv-00327-AWT).

At one point Great West was allegedly considering mediating or settling with both alleged spouses. But after receiving documents from Ranasinghe, Defendants filed a motion for summary judgment pursuant to Rule 56 against Martha Gay. In the motion, Defendants argued Fernando, who was not a party in that case, was Sarath's real spouse. Defendants used documents they received from Ranasinghe in support of their motion and filed them with the court. Popolizio told Ranasinghe his assistance was "vital."

Summary judgment was denied, (Doc. 118, 4:08-cv-00327-AWT), and a trial date set for September 24, 2012. In the parties' joint pretrial statement, Great West reiterated its claims regarding the invalidity of Martha Gay's supposed marriage to Sarath. It also stated the divorce decree Sarath obtained in Florida was contested and that Sarath had traveled back to Sri Lanka in 2007 to dissolve his marriage to Fernando, but that those proceedings had been ongoing and "terminated by operation of law" upon Sarath's death.

On January 18, 2012, the Ninth Circuit affirmed the district court's denial of Fernando's motion to intervene. The panel stated a Mississippi Chancery court decision that Sarath had successfully dissolved his marriage to Fernando was binding and entitled to full faith and credit. Therefore the district court's determination that Fernando had "no significantly protectable interest in the wrongful death suit arising from [Sarath's] death" was correct. (Doc. 124-1, 4:08-cv-00327-AWT).

On May 1, 2012, Defendants, on behalf of Great West, requested a new trial date,

citing personal reasons of the attorneys.[4] The court denied the motion and trial remained set for September 24th. Before trial, Great West settled with Martha Gay. On July 20, 2012, the court granted a stipulation to dismiss the action with prejudice. (Doc. 143, 4:08-cv-00327-AWT).

On February 25, 2014, Plaintiffs filed this suit against Defendants alleging legal malpractice and negligent misrepresentation.[5] The Court dismissed Plaintiffs' previous complaint for failure to state a claim, but granted leave to amend. Plaintiffs amended their complaint and now allege: (1) legal malpractice; (2) negligent misrepresentation; (3) tortious interference with a contractual relationship; and (4) intentional or negligent interference with prospective advantage. Defendants now move to dismiss.

Pursuant to Rule 201, the Court takes judicial notice of the records from the underlying wrongful death suit (4:08-cv-00327-AWT) and parallel breach of contract case (2:14-cv-00564). Fed. R. Evid. 201.

## ANALYSIS

**I. Legal Standard**

To survive a motion to dismiss for failure to state a claim, a complaint must meet the requirements of Federal Rule of Civil Procedure 8(a)(2). Rule 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief," so that the defendant has "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To avoid dismissal, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."

---

[4] Defense counsel had applied for and received a rare elk hunting permit which was to be valid for eight days beginning September 27, 2012. (Doc. 133, 4:08-cv-00327-AWT).

[5] The suit was originally filed jointly with a suit for breach of contract against Great West in the Eastern District of New York. The New York court dismissed the legal malpractice claim for lack of personal jurisdiction. And, when Plaintiffs filed this case in Arizona, the court transferred the breach of contract case to Arizona as well. (*See* 2:14-cv-00564).

*Twombly*, 550 U.S. at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 678). When evaluating a motion to dismiss, a court must accept all factual allegations as true but need not accept legal conclusions. *Coal. for ICANN Transparency, Inc. v. VeriSign, Inc.*, 611 F.3d 495, 501 (9th Cir. 2009). Generally, a court will not consider facts not alleged in the complaint. *See, e.g.*, *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007).

**II. Time for Filing Response**

Plaintiff argues Defendants' motion was filed beyond the time for filing a response. However, Plaintiff miscalculates the response time. Where electronic filing is used, three days are added to the response time. Fed. R. Civ. P. 6(d). In addition, if the deadline to file falls on a weekend or holiday (i.e. day on which the Clerk's Office is inaccessible), the time for filing is again extended to the next day on which the office is open. In this case, these considerations extended the time for Defendants to file until December 29, 2015, the date on which this motion was submitted. Therefore, Plaintiff's argument fails.

**III. Legal Malpractice**

The core of Plaintiff's claim of malpractice is that Popolizio created an attorney-client relationship with Plaintiffs by expressing a common desire to defeat Martha Gay's claim and asking for and using evidence provided by Ranasinghe for the purpose of litigating against Martha Gay. As the Court stated in its previous order, because the claim for wrongful death belonged exclusively to Fernando and not to Ranasinghe, only Fernando would be permitted to replead this claim on amendment. Therefore, the Court will construe this claim as made only in Fernando's name. Defendants argue the amended complaint presents no new facts which alter the Court's previous conclusion about the existence of an attorney-client relationship. The Court agrees with Defendants.

A claim for legal malpractice requires: "(1) the existence of an attorney-client relationship which imposes a duty on the attorney to exercise that degree of skill, care,

and knowledge commonly exercised by members of the profession, (2) breach of that duty, (3) that such negligence was a proximate cause of resulting injury, and (4) the fact and extent of the injury." *Phillips v. Clancy*, 152 Ariz. 415, 418 (Ct. App. 1986).

> An attorney-client relationship arises when:
>
> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
>   (a) the lawyer manifests to the person consent to do so; or
>   (b) the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or
> (2) a tribunal with power to do so appoints the lawyer to provide the services.

THE RESTATEMENT (THIRD) OF THE LAW GOVERNING LAWYERS § 14. *See also Paradigm Ins. Co. v. Langerman Law Offices, P.A.*, 200 Ariz. 146, 149 (2001). An express agreement is not necessary to form an attorney-client relationship. *Paradigm*, 200 Ariz. at 148. However, absent an express agreement, the facts must show the plaintiff believed the defendant was acting as her attorney *and* that that belief was "objectively reasonable" under the circumstances. *Matter of Pappas*, 159 Ariz. 516, 522-23 (1988). In other words, an ordinary person in the plaintiff's situation would have looked to the defendant "as protector rather than adversary." *Pappas*, 159 Ariz. at 522.

> An attorney may owe a duty of care to a non-client, but only where:
>
> (a) the lawyer knows that a client intends as one of the primary objectives of the representation that the lawyer's services benefit the nonclient;
> (b) such a duty would not significantly impair the lawyer's performance of obligations to the client; and
> (c) the absence of such a duty would make enforcement of those obligations to the client unlikely.

*Paradigm Ins. Co. v. Langerman Law Offices,* 200 Ariz. 146, 153 (2001) (quoting *Restatement (Third) of the Law Governing Lawyers* § 51(3) (1998)). Therefore, "[a] lawyer's duty to a nonclient arises only if the nonclient is an 'intended beneficiary' of the lawyer's services." *Kravitz v. Am. Jewish Comm. Proskauer Rose, LLP*, CV-06-1727 PHX FJM, 2006 WL 2724036 (D. Ariz. Sept. 21, 2006) (citing *Wetherill v. Basham,* 197 Ariz. 198, 208 (Ct. App. 2000)). Furthermore, a duty to a non-client can only exist where

the interests of the client and the non-client coincide, in other words, where there is no conflict of interest. *Kravitz*, 2006 WL 2724036 at *2 (citing *Paradigm*, 200 Ariz. at 155).

The complaint does not support the plausibility of an implied attorney-client relationship between Defendants and Fernando. First, the docket for the underlying wrongful death action, *Sapukotana v. Van Straalen Farm Trucking et al.*, No. 4:08-cv-00327, shows Fernando as represented by Viswanathan, a New York attorney. (*See also* Doc. 54, 4:08-cv-00327). Viswanathan filed a motion to intervene and other submissions on Fernando's behalf over the course of several months. (*See* Docs. 64, 91, 97, 108, 109, 113. 114, 115, 4:08-cv-00327). Fernando's affirmative step to hire her own attorney is a strong indication she did not believe Defendants were acting as her attorney. For, Fernando through Viswanathan, was trying to intervene and become a Plaintiff *against* Defendants' client. The complaint contains no explanation how Fernando could have believed she was, in effect, having one of her attorneys litigate against another. Furthermore, the allegations in the complaint describe only Ranasinghe's actions and beliefs as a basis for the malpractice claim. (Doc. 24 at 16) ("Plaintiff Ranasinghe reasonably and in good faith believed that the services rendered by the defendants Jones, Skelton & Hochuli P.L.C. and two attorneys Popolizio and Stanfield were protected by attorney-client relationship under the circumstances."). Perhaps Ranasinghe mistakenly believed Defendants were representing Fernando's legal interests in the underlying suit. But Ranasinghe's beliefs are irrelevant. The complaint does not show Fernando subjectively believed Defendants were acting as her attorneys in the underlying suit, let alone that any such a belief would have been objectively reasonable.

Secondly, Defendants could not have owed a duty to Plaintiffs as non-clients. Fernando issued a notice of claim against Great West and was seeking to intervene as a plaintiff in a lawsuit against it. Plaintiffs therefore have not shown and cannot prove their interests coincided with those of Defendants' client, Great West. Therefore, this claim will be dismissed.[6]

---

[6] It is unclear why Defendants were conversing directly with Ranasinghe,

**IV. Negligent Misrepresentation**

Plaintiff's claim for negligent misrepresentation is, essentially, a reformulation of their claim for legal malpractice. They state: "[Defendants] had a duty to use such skill, prudence, and diligence as members of the legal profession commonly possess and exercise, in providing legal services to the plaintiffs." (Doc. 24 at 19). Plaintiffs further contend Defendants made false representations when they said they would compensate Plaintiffs for Sarath's death when the action brought by Martha Gay was dismissed and expressed the opinion that Martha Gay did not have standing to bring the action. Plaintiffs claim Defendants made these representations with the intent to deceive Plaintiffs. Defendants argue the amended complaint does nothing to remedy deficiencies the Court found with the original complaint's claim of negligent misrepresentation. Plaintiffs do not address this argument in their response to the motion to dismiss. The Court agrees with Defendants.

A claim for negligent misrepresentation requires: (1) the person charged with negligent misrepresentation owed a duty to the injured party; (2) the person owing a duty failed to exercise reasonable care and competence in obtaining or communicating information; (3) in the course of his business or employment, the person owing a duty provided false information for the guidance of others in their business transactions; (4) the recipients of the false information justifiably relied on that information; and (5) the recipients of the false information suffered damages as a result of their reliance on that information. *PLM Tax Certificate Program 1991-92, L.P. v. Schweikert*, 216 Ariz. 47, 50 (Ct. App. 2007). Under Arizona law, "[a] claim for negligent misrepresentation cannot be based on future promises; it must be premised on statements about past or present facts." *In re Allstate Life Ins. Co. Litig.*, 971 F. Supp. 2d 930, 945 (D. Ariz. 2013).

As stated above, Plaintiffs cannot show Defendants owed a duty because of attorney-client relationship. No other standard of duty applies. Furthermore, Defendant's alleged promise that, once Martha Gay's wrongful death claim was rejected by a jury

---

Fernando's agent, about the case when it appears clear Fernando was represented by an attorney.

- 8 -

Great West would pay damages to Fernando, is a future promise for which negligent representation action cannot be sustained. Plaintiffs have not made a plausible showing that Defendants' expressions over their beliefs as to Martha Gay's standing were false or made with intent to deceive. Defendants more than occasionally settle with litigants who they do not believe have a valid claim because litigating would ultimately be more costly than settlement. That appears to have been the course in this case. Therefore, this claim will be dismissed.

**V. Tortious Interference with Contractual Relationship and Prospective Advantage**

Plaintiffs claim Defendants tortuously interfered with a binding contract between themselves and Great West "that Great West will pay full compensation when at Jury Trial in Arizona the court decides that the marriage of Martha with deceased Sarath was of convenience and to circumvent the immigration laws of the United States to obtain green card," and "[a]lternatively, the Plaintiffs are intended third party beneficiaries of the contract between defendants and Great West contract where the defendants undertake to dismiss the complaint of the wrongful death action of the lawyer's service." (Doc. 24 at 8).[7] In the order dismissing Plaintiff's original complaint, the Court provided leave to amend only to add additional facts as to the claim stated in that complaint. (Doc. 21). The Court did not grant leave to Plaintiffs to add new claims. *See* Fed. R. Civ. P. 15(a)(2). This alone would be grounds for dismissing Plaintiff's new claims for tortious interference. But, as Defendants argue, Plaintiff's claims also fail on the merits.[8]

A claim for tortious interference with contractual relations or prospective advantage (also known as business expectancy) must show:

> [(1)] the existence of a valid contractual relationship or business expectancy; [(2)] the interferer's knowledge of the relationship or expectancy; [(3)] intentional interference inducing or causing a breach or termination of the relationship or

---

[7] The Court notes Plaintiffs have cited only out-of-state law in the response on this count, which is of minimal value.

[8] Plaintiffs also raised a claim for negligent interference with prospective economic advantage, but it is not recognized under Arizona law. *Loomis v. U.S. Bank Home Mortgage*, 912 F. Supp. 2d 848, 860 (D. Ariz. 2012). That claim will, therefore, be dismissed.

expectancy; and [(4)] resultant damage to the party whose relationship or expectancy has been disrupted. . . In addition, the interference must be improper as to motive or means before liability will attach.

*Neonatology Associates, Ltd. v. Phoenix Perinatal Associates Inc.*, 216 Ariz. 185, 187 (Ct. App. 2007).

Plaintiff's claim based on the first alleged contract fails because the alleged contract was conditioned on the resolution of a jury trial which never occurred. Therefore, the conditional promise was never triggered and there was no breach. Regarding the second alleged contract, it appears Plaintiffs argue they were intended third party beneficiaries of Defendant's contract to represent Great West. This claim was rejected in the previous order and will again be rejected because there is no indication Great West intended Fernando or Ranasinghe as third party beneficiaries of its representation against Martha Gay by Defendants.

Finally, the complaint fails to allege how Defendants' conduct improperly induced any breach of contract or terminated a business expectancy. As Great West's lawyers, Defendants were acting on Great West's behalf, with its consent, and at its direction. They did not act improperly in advising Great West of its legal interests and options or asking for a trial continuance. Because Plaintiffs have failed to allege a valid contractual relationship or business expectancy or any improper interference, this claim will be dismissed.

**VI. Attorneys' Fees**

Defendants argue they are entitled to attorneys' fees pursuant to the inherent power of the Court because "Plaintiffs' contentions [were] clearly unsupported and contradict[ed] clear authority." (Doc. 25 at 12). Plaintiffs do not respond to this argument.

> Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion. There are ample grounds for recognizing, however, that in narrowly defined circumstances federal courts have inherent power to assess attorney's fees against counsel.

*Roadway Express v. Piper*, 447 U.S. 752, 765 (1980). These narrow circumstances

include bad faith. *Zambrano v. City of Tustin*, 885 F.2d 1473, 1478 (9th Cir. 1989) ("To insure that restraint is properly exercised, we have routinely insisted upon a finding of bad faith before sanctions may be imposed under the court's inherent power.").

Plaintiffs did not entirely hew to the directions of the Court's order of dismissal and possibly filed a case in bad faith in a court in New York. Although it is not clear here, it appears Plaintiff's lack of success stems from inadequate legal training and professional standards, rather than bad faith. However, Plaintiffs did not even respond to the portion of Defendants' motion arguing for attorneys' fees. Failure to response may be deemed "consent to the . . . granting of the motion." LRCiv 7.2(i). Therefore, attorneys' fees will be granted.

Accordingly,

**IT IS ORDERED** Defendants' motion to dismiss (Doc. 25) is **GRANTED**, and this case is dismissed with prejudice.

**IT IS FURTHER ORDERED** Defendants shall submit a memorandum in support of their motion for attorneys' fees in accordance with LRCiv 54.2 no later than **February 20, 2015**. Plaintiffs shall respond, also in accordance with LRCiv 54.2, no later than **March 9, 2015**. Defendants shall reply no later than **March 19, 2015**. All briefing must comply with LRCiv 7.2.

Dated this 17th day of February, 2015.

Honorable Roslyn O. Silver
Senior United States District Judge

- 11 -